**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIMOTHY BAUMGARDNER,                           Case No. 1:11-cv-794
    Plaintiff,                                       Beckwith, J.
                                                Litkovitz, M.J.

vs.

TENACITY MANUFACTURING               **ORDER**
COMPANY, *et al.*,
    Defendants

This matter is before the Court following a telephone status conference held April 27,

2012, regarding the permissible scope of the depositions of defendants Scott Williams, Patrick

Williams, and William Oates on the question of personal jurisdiction. At issue is whether plaintiff

may depose these individuals on matters relating to Ohio Rev. Code § 2307.382(A)(6), which

provides a basis for personal jurisdiction over a person "causing tortious injury in this state to any

person by an act outside this state" and which arguably relate to the substance of plaintiff's

underlying claims in this case. Having considered the parties' arguments as presented in their

briefings (attached hereto) and during the conference, the Court hereby orders:

1. Plaintiff is entitled to engage in limited discovery, including taking the depositions of the
   above-listed individual defendants, to aid in the personal jurisdiction determination;

2. With respect to the deposition of defendant William Oates, plaintiff shall initially limit
   his deposition questions to the determination of whether Mr. Oates has established
   "minimal contacts" with the State of Ohio such that extending personal jurisdiction over
   him in this Court comports with constitutional due process considerations. If after this
   line of questioning counsel for plaintiff in good faith determines there is sufficient
   evidence to establish a *prima facie* case of personal jurisdiction under the Due Process
   Clause, then -- subject to defendants' objections and resolution by the Court as described
   more fully below -- plaintiff may proceed with questions on whether this Court has
   personal jurisdiction over the defendant under the Ohio long-arm statute, including
   engaging in discovery which necessarily extends beyond purely procedural matters given
   the parameters of Ohio's long-arm statute as codified in Ohio Rev. Code §
   2307.382(A)(6);

3.  With respect to defendants Patrick Williams and Scott Williams:

    a.  Plaintiff is permitted to ask deposition questions on whether these defendants have established "minimal contacts" with the State of Ohio such that extending personal jurisdiction over him in this Court comports with constitutional due process considerations; and

    b.  Plaintiff is permitted to ask deposition questions on matters relating to Ohio Rev. Code § 2307.382(A)(6), which necessarily extend beyond purely procedural matters given the parameters of Ohio's long-arm statute as codified;

4.  The defendants are permitted to first depose plaintiff in Ohio prior to proceeding with any out-of-state depositions of the above-named individual defendants;

5.  As discussed during the status conference, the parties will coordinate with this Court to ensure that the undersigned is available via telephone during the depositions of defendants Patrick Williams, Scott Williams, and William Oates to provide any necessary rulings regarding the scope of questions presented at these depositions.

6.  The deadline for discovery directed toward issues of personal jurisdiction over the defendants is July 13, 2012;

7.  Plaintiff's deadline for filing a response to motions directed toward the pleadings is July 13, 2012.

Following the resolution of personal jurisdiction issues by the District Judge in this matter, the undersigned shall reconvene a scheduling conference to set a scheduling order for the remainder of the case.

**IT IS SO ORDERED.**

Date: 4/27/12

Karen L. Litkovitz
United States Magistrate Judge

2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TIMOTHY BAUMGARDNER       :    Case No. 1:11-CV-00794-SSB-KLL

      Plaintiff          :    Judge Sandra S. Beckwith

      v.               :    Magistrate Judge Karen L. Litkovitz

TENACITY MANUFACTURING    :    **PLAINTIFF'S MEMORANDUM**
COMPANY, et al.,             :    **CONCERNING SCOPE OF**
                            :    **DISCOVERY ON ISSUES OF**
      Defendants.       :    **PERSONAL JURISDICTION**
                            :

## I.    INTRODUCTION

Several Defendants have filed motions to dismiss for lack of personal jurisdiction. A question has arisen regarding the appropriate scope of discovery permitted to Plaintiff in responding to the motions to dismiss. Two related issues are presented:

1. May Plaintiff conduct discovery and depose the Defendants on the substance of Plaintiff's tortious interference with contract claims in order to determine whether Defendants caused tortious injury to Plaintiff by an act outside of Ohio committed with the purpose of injuring Plaintiff, for purposes of establishing the Court's personal jurisdiction over Defendants (Ohio Rev. Code 2307.382(A)(6))?

2. Aside from the personal jurisdiction issues, may Plaintiff depose the Defendants in Texas on the substance of the claims and defenses, as well as on traditional "minimum contacts" issues, in order to avoid a second round of depositions of those Defendants in Texas?

## II.  ARGUMENT

### A.  The Issue Before The Court Is The Proper Scope Of Discovery, Not The Court's Jurisdiction Over Defendants.

This memorandum is not intended to convince the Court that it has personal jurisdiction

over the Defendants.  That issue is not yet ripe, and it will be briefed after appropriate discovery

and briefing pursuant to a schedule to be determined.  The Plaintiff need only make a prima facie

showing to establish personal jurisdiction over the Defendants.  *Serras v. First Tennessee Bank*

*Nat. Ass'n,* 875 F.2d 212, 214 (6th Cir. 1989).  Now, however, the issue is simply whether the

Plaintiff will be permitted to conduct discovery sufficient to fully investigate the question of

whether the Defendants may have subjected themselves to the jurisdiction of the Court by

tortiously interfering with Plaintiff's employment contract, thereby injuring Plaintiff in Ohio.

### B.  Where, As Here, The Effects Of Out-Of-State Conduct Are Calculated To Cause Injury In Ohio, Due Process Minimum Contact Requirements Are Met.

In *Calder v. Jones,* 465 U.S. 783 (1984), the United States Supreme Court held that

California courts had jurisdiction over Florida residents who had caused injury from outside of

California through intentional conduct directed at the California plaintiff.  By publishing an

allegedly libelous story about professional entertainer Shirley Jones, the Florida defendants

"knew that the brunt of [the] injury would be felt by Respondent in the State in which she lives

and works . . ..  Under the circumstances, petitioners must 'reasonably anticipate being haled into

court there' to answer for the truth of the statements made in the article." *Id.* at 789-90.

The Ohio Supreme Court followed and applied the *Calder* case in *Kaufman Racing*

*Equipment, L.L.C. v. Roberts,* 930 N.E.2d 784 (Ohio 2010) (personal jurisdiction based on

nonresident buyer's internet postings criticizing seller comports with due process where buyer

knew the alleged defamation concerned a resident of Ohio and the brunt of the harm suffered was in Ohio).

Likewise, the United States Court of Appeals for the Sixth Circuit has followed and applied *Calder*. See, e.g., *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109 (6th Cir. 2005) (where defendants purposefully directed activities at plaintiff that caused consequences in Ohio, they should have reasonably foreseen that they could be haled into an Ohio court.)

Here, Plaintiff has alleged that the moving defendants tortiously interfered with his employment contract in Ohio by conspiring to concoct a reason to terminate the contract "for cause" on the eve of the sale and purchase of the assets of "Old LBS" to what became Defendant Kofile Preservation, Inc. The termination cost Plaintiff several hundred thousand dollars and saved the Defendants an equal amount. (Complaint, Doc. 2). When the Defendants terminated Plaintiff, they knew that the harm would be borne by him in Ohio. Under *Calder*, *Kaufman Racing Equipment, and Scotts Co.*, Defendants' tortious acts are sufficient to give this Court personal jurisdiction over them.

C.    **The Individual Defendants Are Personally Liable For Their Torts.**

The individual Defendants have argued in their motions to dismiss that they cannot be personally liable for Plaintiff's claims because they were acting in their capacities as corporate officers. But under Ohio law, corporate officers may be held personally liable for their tortious conduct carried out on behalf of the corporation. *Bowes v. Cincinnati Riverfront Coliseum*, 12 Ohio App.3d 12 (1983); *Schaefer v. D. & J. Produce*, 62 Ohio App.2d. 53 (1978). Thus, the fact that the individual defendants may have been acting in their corporate capacities when they tortiously interfered with Plaintiff's employment contract does not absolve them of personal liability for their conduct.

**D.** **Defendants Scott And Patrick Williams Had Minimum Contacts With Ohio Even Before They Tortiously Interfered With Plaintiff's Contract.**

As shown by the attached Declaration of Timothy Baumgardner, Defendants Scott and Patrick Williams both contacted him by telephone on two separate occasions in 2009 specifically to negotiate the terms of his employment contract with Louisiana Binding Service, Inc. (Baumgardner Decl., attached.) That is the same employment contract that was breached a year and a half later, leading to this lawsuit. The Williams's conducted business in Ohio by negotiating Plaintiff's employment contract over the telephone. See *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.") If the cause of action is for breach of contract, then it naturally arises from the defendant's contact with the forum. *Id.*

Moreover, the Sixth Circuit has held that telephone conversations and correspondence can be sufficient, without additional contact, to establish personal jurisdiction over a defendant sued for breach of an employment contract. *Onderik v Morgan,* 897 F.2d 204 (6th Cir. 1989). Citing *Onderik,* the United States District Court for the Eastern District of Michigan concluded: "If the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, even by way of a phone call or written correspondence to the forum, personal jurisdiction is appropriate." *General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656, 663 (E.D. Mich. 1996).

**E.** **Plaintiff Has Pled Facts Which, If Proved, Are Sufficient To Establish The Court's Personal Jurisdiction Over Defendants.**

The facts pled are themselves sufficient to establish jurisdiction over the Defendants. At the very least, Plaintiff should be afforded the opportunity to conduct sufficient discovery to

4

demonstrate that Defendants' actions caused tortious injury in Ohio, regardless of their other, prior contact—or lack thereof.

**F.      There Is No Reason To Force Two Sets Of Depositions Of Defendants.**

Plaintiff has already stated his willingness to waive any argument that by participating in discovery, Defendants are submitting to the Court's jurisdiction.  Regardless of the ultimate outcome of the pending motions to dismiss, it makes no sense to require two trips to Texas and two sets of depositions.  Plaintiff should be permitted to conduct discovery and depose the Defendants on all of the substantive issues in the case, as well as on the issue of personal jurisdiction.

**III.    CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court order that discovery may now be taken on all substantive issues in the case.

/s/ Robert A. Klingler
Robert A. Klingler (0031603)
Brian J. Butler (0082675)
ROBERT A. KLINGLER CO., L.P.A.
525 Vine Street, Suite 2320
Cincinnati, Ohio 45202-3133
Telephone: (513) 665-9500
Facsimile: (513) 621-3240
Email: rak@klinglerlaw.com

Joel L. Peschke (0072526
Joshua F. DeBra (0083267)
Calderhead Lockmeyer & Peschke
5405 Dupont Cir., Suite E
Milford, Ohio 45150
ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 24th day of April, 2012, by electronic mail and regular U.S. mail on the following:

**/s/ Valerie L. Van Valkenburg**
**Valerie L. Van Valkenburg (0034426)**
**Smith, Rolfes & Skavdahl Company LPA**
**600 Vine Street, Suite 2600**
**Cincinnati, OH 45202**
**Telephone: (513) 241-3100**
**Facsimile: (513) 241-4094**
***ATTORNEY FOR DEFENDANTS PATRICK AND SCOTT WILLIAMS***

**/s/ William R. Ellis**
**William R. Ellis (0012279)**
**Roetzel & Andress LPA**
**250 E. Fifth Street, Suite 310**
**Cincinnati, OH 45202**
**Telephone: (513) 361-8264**
**Facsimile: (513) 361-8284**
***ATTORNEY FOR DEFENDANTS TENACITY, KOFILE AND WILLIAM OATES***

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **TIMOTHY BAUMGARDNER** | : | Case No. 1:11-CV-00794-SSB-KLL |
| | : | |
| Plaintiff | : | Judge Sandra S. Beckwith |
| | : | |
| ·v. | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| **TENACITY MANUFACTURING** | : | |
| **COMPANY, et al.,** | : | **DECLARATION OF TIMOTHY** |
| | : | **BAUMGARDNER** |
| Defendants. | : | |
| | : | |

1.      I am the Plaintiff in this action.

2.      In October 2009, Defendants Scott Williams and Patrick Williams called me on my telephone in Cincinnati, Ohio on two separate occasions to discuss my leaving my employment with Tenacity Manufacturing Company and joining Louisiana Binding Service, Inc. On both occasions, both Scott and Patrick Williams were on the telephone.

3.      These two telephone conversations had been set up by emails from either Scott or Patrick Williams to my wife's email address in Cincinnati, Ohio.

4.      The two telephone conversations in October 2009 involved discussions about the terms of my potential employment with Louisiana Binding Service Inc.

I declare under penalty of perjury that this Declaration is true and correct.


_Timothy A Baumgardner_
Timothy Baumgarder

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BAUMGARDNER, | : | CASE NO. 1:11-cv-00794-SSB-KLL |
| | : | |
| Plaintiff, | : | Judge Sandra S. Beckwith |
| | : | |
| v. | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| TENACITY MANUFACTURING | : | |
| COMPANY, et al., | : | **DEFENDANTS WILLIAM D. OATES** |
| | : | **AND KOFILE PRESERVATION,** |
| Defendants. | : | **INC.'S BRIEF ON JURISDICTIONAL** |
| | : | **DISCOVERY ISSUES** |
| | : | |

Now come Defendants, William D. Oates ("Oates") and Kofile Preservation Inc. ("Kofile Preservation"), by and through their undersigned counsel, and pursuant to the Court's Order entered April 11, 2012, submit this brief on the issue of the proper scope of jurisdictional discovery sought by Plaintiff in this matter.

## INTRODUCTION

Oates and Kofile Preservation have filed a motion to dismiss based on lack of personal jurisdiction. The facts relevant to this motion are straightforward. Plaintiff Timothy Baumgardner ("Baumgardner") had an Employment Agreement with Defendant Louisiana Binding Service, Inc., now known as LBS Liquidation Corp. ("LBS"). A predecessor entity of Kofile Preservation acquired the assets, but not the liabilities of LBS in June of 2011. About a month before that purchase transaction (the "Transaction") was consummated, LBS, without any consultation with Oates or the purchaser, terminated Baumgardner's employment.

Plaintiff alleges that LBS breached his Employment Agreement by discharging him and that he is entitled to the severance payments contemplated by that contract. Baumgardner also claims that Oates interfered with his Employment Agreement or conspired with LBS to breach

the contract. [ECF Doc. No. 1-1, ¶ 35-40, 48-51.] Baumgardner's only claim against Kofile Preservation is that it allegedly assumed the liabilities of LBS. [*Id.*, ¶ 6, 52.][1]

Oates is an individual resident of Texas, and Kofile Preservation is a Delaware corporation with its principal place of business in Dallas, Texas. In support of their challenge to personal jurisdiction in Ohio, Oates and Kofile Preservation have submitted evidence, in the form of Oates' declaration, demonstrating that they did not enter into any transaction in Ohio or commit any acts in Ohio relating in any way to Baumgardner's claims. [*See generally* ECF Doc. No. 29-2.][2]

## ARGUMENT

### A.    The Test for Establishing Personal Jurisdiction

The party seeking to assert personal jurisdiction bears the burden of establishing that jurisdiction exists. *Indah v. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In a diversity case such as this, the Court employs a two part test to ascertain whether it has personal jurisdiction over a defendant. *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011). An Ohio court can exercise specific jurisdiction[3] over a defendant if (1) jurisdiction is proper under the Ohio long-arm statute, and (2) the exercise of personal jurisdiction satisfies the Due Process requirements of the Fourteenth Amendment.

---

[1] Baumgardner has also sued another Oates-affiliated entity, Tenacity Manufacturing, Inc. ("Tenacity"), which employed Baumgardner prior to LBS. Tenacity had sued LBS and Baumgardner for misappropriation of trade secrets, but that suit was dismissed after the Transaction was closed. Tenacity has not challenged personal jurisdiction over it.

[2] For the Court's convenience, a copy of Oates' declaration is attached hereto as Exhibit A.

[3] It does not appear that Baumgardner intends to argue that Oates and Kofile Preservation are subject to "general jurisdiction" in Ohio—*i.e.*, that they could be sued in Ohio even on causes of action completely unrelated to their contacts with this state. Moreover, the Ohio courts require a plaintiff to allege specific jurisdiction under one of the grounds of the long-arm statute, and it is questionable whether Ohio even recognizes general jurisdiction over non-resident defendants. *See Conn v. Zakharov*, 667 F.3d 705, 717-18 (6th Cir. 2012). Regardless, it is sufficient for present purposes to note that Oates and Kofile Preservation are not objecting to discovery relevant to general jurisdiction.

*Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506, 511 (6th Cir. 2006). "The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Notably, unlike other jurisdictions, Ohio's long-arm statute does not reach to the limits of Due Process, and the analysis under the long-arm statute is a particularized inquiry wholly separate from the federal constitutional analysis. *Kroger*, 437 F.3d. at 511 (citing *Goldstein v. Chistiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541, 543 (Ohio 1994)).

If the plaintiff establishes that his claim falls within one of the enumerated grounds for jurisdiction under the long-arm statute, he must still satisfy the due process requirement. The Sixth Circuit has held that specific jurisdiction is permissible only if the plaintiff meets a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon*, 228 F.3d at 721 (quoting *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)).

## B.     Motion to Dismiss Procedure and Discovery

In the face of a properly supported motion to dismiss, a plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth the specific facts showing that the Court has jurisdiction. *Id.* The extent of the plaintiff's burden depends on whether the Court chooses to rule on written submissions or to hear evidence on the personal jurisdiction issue. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d. 1212, 1214 (6th Cir. 1989). If the Court decides the issue on the pleadings and affidavits, the plaintiff must make only a prima facie showing that personal

jurisdiction exists, and the Court will resolve any conflicts in the evidence in the light most favorable to the plaintiff. *Id.* If, on the other hand, the Court conducts an evidentiary hearing, the plaintiff must meet a preponderance of the evidence standard. *Id.* Either way, however, the plaintiff bears the burden of establishing that jurisdiction exists. *Id.*

The Court may permit a plaintiff to take discovery to investigate jurisdictional facts. *Theunissen*, 935 F.2d at 1468. The scope of such discovery is a matter committed to the sound discretion of the Court. *Id.* Discovery should be broad enough to allow the parties to address the factual issues that are in dispute on the question of personal jurisdiction. *Serras*, 875 F.2d at 1214. The Court should be careful to ensure, however, that jurisdictional discovery does not become so broad that it conflicts with the purposes and protections of personal jurisdiction. *Draper, Inc. v. Mechoshade Systems, Inc.*, No. 1:10-cv-1443-SEB-DICL, 2012 U.S. Dist. LEXIS 11243 at *4 (S.D. Ind. Jan 30, 2012).

## C.  Application to the Present Action

Baumgardner has not pled any specific facts supporting personal jurisdiction over Oates or Kofile Preservation in Ohio. [*See* ECF Doc. No. 1-1, ¶ 9 (stating only that all of the Defendants had "substantial contacts" with Ohio and the claims against them "arise from their activities within Ohio").] In response to their motion to dismiss, therefore, Baumgardner will have to come forward with evidence of contacts Oates and Kofile Preservation had with Ohio that are sufficient to subject them to personal jurisdiction. Apparently, Baumgardner will attempt to meet this burden by asserting that Oates intentionally caused him tortious injury in Ohio. *See* OHIO REV. CODE § 2307.382(A)(6) (authorizing exercise of jurisdiction over a person that causes "tortious injury in this state by an act outside this state committed with the purpose of injuring person when he might reasonably have expected some person would be injured thereby

in this state").[4]  Although Baumgardner's allegations of tortious interference and conspiracy against Oates may fall within the scope of § 2307.382(A)(6), they are not sufficient standing alone to establish personal jurisdiction.  Moreover, as discussed below, those allegations do not justify allowing full merits discovery at this time.

By its terms, § 2307.382(A)(6) requires proof of intentional tortious conduct.  Although Baumgardner has alleged generally that Oates interfered with his Employment Agreement with LBS, in order to establish that Oates is subject to jurisdiction under the long-arm statute Baumgardner must present evidence of (1) some act of interference by Oates outside the state that was (2) for the express purpose of causing injury to Baumgardner in Ohio.  In fact, however, the evidence submitted in support of the motion to dismiss proves just the opposite.  In this regard, Oates has testified that he had told LBS during the negotiation of the Transaction that the purchaser would offer Baumgardner a job after the Transaction was completed.  This fact is corroborated by an email from one of LBS' principals dated April 25, 2011 (approximately 3 weeks before Baumgardner was terminated), which has previously been provided to Plaintiff.[5]  Moreover, Oates has testified that this was the only communication he had with LBS about Baumgardner prior to the time that LBS, for its own reasons, terminated Baumgardner's employment.  To satisfy the Ohio long-arm statute, therefore, Baumgardner will have to adduce evidence controverting Oates' testimony and these contemporaneous business records.

Importantly, Oates and Kofile Preservation have not disputed Baumgardner's right to take discovery on this issue.  Baumgardner served written discovery requests on Oates and Kofile Preservation, and they have responded by producing, among other things, all written

---

[4] As noted, Baumgardner has not alleged that Kofile Preservation, which did not even exist when he was terminated by LBS, committed any tort.  It is unclear, therefore, whether or how Baumgardner will argue the long-arm statute applies to Kofile Preservation.

[5] A copy of the April 25 email is attached hereto as Exhibit B.

5

communications with LBS in the negotiations for the Transaction that related in any way to Baumgardner, including the April 25 email. (*See* Exhibit B attached hereto.)  Baumgardner has also requested Oates' deposition, and Oates will answer questions regarding his knowledge of, or communications with LBS about, Baumgardner's employment with LBS.  And Oates will also respond to any other questions relevant to his contacts with Ohio.

However, even if there were evidence that Oates had intentionally interfered with Baumgardner's employment with LBS (which there is not), Baumgardner would still need to prove more to   satisfy the due process requirement for establishing personal jurisdiction in Ohio. Presumably, Baumgardner will argue that he suffered the effects of Oates' alleged tortious conduct in Ohio, and that is sufficient to satisfy the constitutional test. *See Calder v. Jones,* 465 U.S. 783 (1984) (writer and editor in defamation case were subject to personal jurisdiction in California, where subject of allegedly defamatory article lived, and defendants knew focal point of article and "brunt of the harm" would be in California).  However, the Sixth Circuit has interpreted this *Calder* "effects test" narrowly, holding that an allegation of intentional tortious conduct that injures a forum resident does not, by itself, satisfy the purposeful availment test of due process. *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 552 (6th Cir. 2007).  Rather it is only one factor that will be considered and may enhance a defendant's other contacts with the forum. *Id.*

Applying this standard, the district courts in this circuit have not hesitated to grant motions to dismiss when the sole basis for personal jurisdiction is the allegation that the defendant intentionally caused injury to a forum state resident. *See, e.g., Wiltz v. New Jersey,* No. 2:09-cv-005920, 2010 U.S. Dist. LEXIS 95758 (S.D. Ohio Sept. 14, 2010) (dismissing claims against New Jersey defendants who allegedly injured Ohio plaintiff by falsifying records

and obstructing lawsuit, even though defendants had communications with plaintiff in Ohio); *Delta Media Group, Inc. v. Kee Group, Inc.*, No. 5:07-cv-01597, 2007 U.S. Dist. LEXIS 80878 (N.D. Ohio Oct. 31, 2007) ("acceptance of Plaintiff's 'injury only' argument as a sufficient basis for the exercise of personal jurisdiction effectively would permit jurisdiction in the home forum of any plaintiff"). Similarly, in *Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995), a case cited by the Sixth Circuit with approval in *Safetech*, the Tenth Circuit affirmed the dismissal of a tortious interference claim brought by a Utah corporation, where all of the activities that allegedly constituted interference occurred in Nevada, even though the plaintiff suffered the financial harm in Utah. *Id.* at 1080.

So too here, Oates' declaration establishes that all of the negotiations with LBS and other activities relating to the Transaction, which Baumgardner claims constitute the interference with his contract, occurred in Texas and Louisiana. Baumgardner has not identified any contacts Oates had with Ohio that relate to his claim that Oates caused LBS to terminate his employment. Of course, the Court is not being asked to rule on the motion to dismiss at this time. Instead, the question is whether Baumgardner's discovery should be limited to these jurisdictional issues. Given the tenuous nature of the allegations supporting personal jurisdiction, and the legal principles described above, the Court should limit the scope of discovery so that Oates and Kofile Preservation are not required to fully defend this action in Ohio before this threshold determination has been made.

## CONCLUSION

For the foregoing reasons, Oates and Kofile Preservation submit that Baumgardner's discovery should be limited to the issue of personal jurisdiction only.

Respectfully Submitted,

*William R. Ellis*

William R. Ellis (0012279)
Roetzel & Andress LPA
310 Chiquita Center
250 East Fifth Street
Cincinnati, OH  45202-4119
513-361-0200
513-361-0335 – Fax
wellis@ralaw.com

Mark T. Davenport
Don Colleluori
Figari & Davenport, L.L.P.
3400 Bank of America Plaza
901 Main Street
Dallas, TX 75202
214-939-2007 (Direct)
214-939-2090 (Fax)
mark.davenport@figdav.com
don.colleluori@figdav.com

*ATTORNEYS FOR DEFENDANTS*
*KOFILE PRESERVATION INC. AND*
*WILLIAM D. OATES*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2012, a copy of the foregoing Defendants William D. Oates and Kofile Preservation, Inc.'s Brief on Jurisdictional Discovery Issues was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*William R. Ellis*

William R. Ellis (0012279)

8

Case: 1:11-cv-00794-SSB-KLL Doc #: 29-2 Filed: 02/14/12 Page: 1 of 5 PAGEID #: 287

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BAUMGARDNER, | § | CASE NO. 1:11CV794 |
| | § | |
| Plaintiff, | § | JUDGE SANDRA BECKWITH |
| | § | |
| Vs. | § | |
| | § | |
| TENACITY MANUFACTURING | § | DECLARATION OF |
| COMPANY, et al., | § | WILLIAM D. OATES |
| | § | |
| Defendants. | § | |

1.     My name is William D. Oates. I am over eighteen (18) years of age and am otherwise competent to testify to the matters stated hereinafter. I have personal knowledge of the facts set forth herein, all of which are true and correct.

2.     I maintain my primary residence in Dallas, Texas, and have done so since 1968. I also maintain my business office in Dallas, Texas, and have done so since 1970.

3.     I have never resided in Ohio, and I personally do not have any regular or ongoing contacts with Ohio. Specifically, I have never personally: (a) owned any real or personal property located in Ohio; (b) rented or leased any property located in Ohio; (c) maintained a telephone listing or mailing address in Ohio; (d) maintained a bank account in Ohio; (e) been billed for or paid property taxes in Ohio; (f) had any employees, or solicited any employees, in Ohio; (g) held an Ohio driver's license or voted in an election in Ohio; (h) been a party to a lawsuit filed in Ohio (other than this action); or (e) had any other legal or equitable interest in any assets in Ohio. Over my lifetime, I have visited


EXHIBIT
A

Ohio occasionally, but the last time I was in Ohio was more than 3 1/2 years ago.

4.     Kofile, Inc., formerly known as Business Resources Corporation ("Kofile"), is a Texas corporation with its principal place of business in Texas. I am the President of Kofile and, through an intermediate holding company, the indirect majority shareholder.  On or about April 27, 2011, Kofile (known at the time as Business Resources Corporation) entered into a letter of intent with Louisiana Binding Service, Inc. ("Old LBS"), a Louisiana corporation, WWD Investments, Inc. ("WWD"), a Louisiana corporation, and Pat and Scott Williams (together, the "Williams"), the principals of Old LBS and WWD, to acquire the assets of Old LBS and the real and personal property owned by Old LBS, WWD, or the Williams used in the business of Old LBS.  A true and correct copy of the letter of intent is attached hereto as Exhibit A.

5.     In order to effectuate the proposed purchase of the assets of Old LBS, a new Texas corporation, LBS Acquisition Corporation was formed on or about June 3, 2011 and later renamed Louisiana Binding Service, Inc. ("New LBS").  New LBS was a wholly owned subsidiary of Kofile.

6.     Pursuant to an Asset Purchase Agreement ("Agreement") dated June 17, 2011, LBS Acquisition Corporation and Business Resources Corporation completed the acquisition of the assets of Old LBS.  A true and correct copy of the Agreement, redacted as to the purchase price, is attached hereto as Exhibit B.  The Agreement specifically provided, however, that New LBS did not assume any liabilities of Old LBS other than those specifically identified.  Moreover, the Agreement provided that no employment agreements, severance arrangements, or other employee liabilities of Old LBS were

assumed by New LBS.

7.      Along with my legal counsel, who are both located in Dallas, Texas, I was the person primarily involved on behalf of LBS Acquisition Corporation and Business Resources Corporation in the transaction for the purchase of the assets of Old LBS. The Williams live and work in Louisiana, and all of the negotiations for the purchase of the assets of Old LBS took place in Texas, Louisiana, or between those two states by telephone or written communication, including electronic mail. None of the negotiations took place in Ohio or involved any representative of Old LBS who was located in Ohio. The Agreement was executed by me as President of LBS Acquisition Corporation and Business Resources Corporation in Dallas, Texas, and it provides that it will be governed by Texas law and that any action to enforce the Agreement would be brought in Dallas, Texas.

8.      Following the completion of the purchase of the assets of Old LBS, effective September 1, 2011, Kofile Preservation, Inc. was formed as a result of the merger of two wholly owned subsidiaries of Kofile, New LBS and Brown's River Marotti Co. ("BRM"), a Delaware corporation with its principal place of business in Vermont. BRM was the surviving entity of the merger and then subsequently changed its name to Kofile Preservation, Inc. ("Kofile Preservation"). Accordingly, Kofile Preservation is a wholly owned subsidiary of Kofile.

9.      Tenacity Manufacturing Company ("Tenacity"), a Delaware corporation, is also a separate wholly owned subsidiary of Kofile. At one time, Tenacity employed the plaintiff in this action, Timothy Baumgardner ("Baumgardner"). Baumgardner resigned

from Tenacity in 2010 and went to work for Old LBS. Tenacity was not a party to, or involved in any way with, the acquisition of the assets of Old LBS in 2011, nor does it have any involvement with the business of Kofile Preservation, other than as a separate sister company since that time.

10. I did not have any communications with Baumgardner, either as an individual or as a corporate officer, regarding the purchase of Old LBS's assets by New LBS or any other matter during 2011. Nor did I have any communications with the Williams or any other representative of Old LBS in any capacity about their intent to terminate Baumgardner's employment with old LBS prior to such termination occurring. To the contrary, in my only discussion with the Williams regarding Baumgardner's employment prior to the time he was terminated by Old LBS, I had agreed, as an officer of the acquiring company, that Baumgardner would be offered a position with that company after the purchase transaction was completed.

11. Neither Kofile Preservation nor its predecessor entities, New LBS and BRM, has ever: (a) owned any real or personal property located in Ohio; (b) rented or leased any property located in Ohio; (c) maintained a bank account in Ohio; (d) been billed for or paid property taxes in Ohio; (e) had any employees in Ohio; (f) been a party to a lawsuit filed in Ohio (other than this action); or (g) had any other legal or equitable interest in any assets in Ohio.

12. Kofile Preservation has only a few customers located in Ohio. In this regard, from the time that it commenced doing business until it was merged into BRM, New LBS generated total revenues of approximately $36,000, from a total of only 3

DECLARATION OF WILLIAM D. OATES - PAGE 4

Case: 1:11-cv-00794-SSB-KLL Doc #: 29-2 Filed: 02/14/12 Page: 5 of 5 PAGEID #: 291

customers in Ohio. The other predecessor entity to Kofile Preservation, BRM, had no involvement whatsoever in any of the matters that are the subject of Baumgardner's claims in this lawsuit. Moreover, BRM provided services to only a few municipalities and counties in Ohio, and it recorded revenues of approximately $21,000 in 2010 and $9,000 in 2011 up to the time of the merger from such sales. The merged entity, renamed Kofile Preservation, recorded revenues of approximately $19,000 from Ohio customers in September of 2011.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this /4ᵗʰ day of February, 2012.

William D. Oates

**EXHIBIT 2**

## John Woolf

| | |
|---|---|
| From: | Pat Williams [pwilliams@louisianabindingservice.com] |
| Sent: | Monday, April 25, 2011 4:23 PM |
| To: | John Woolf |
| Cc: | William Oates; 'Scott Williams' |
| Subject: | RE: LBS/BRC Letter of Intent |
| Attachments: | Draft By Pat 4 25 2011 BRC-LBS Purchase Letter of Intent 4 21 11.docx |

John,

I have attached a draft of the LOI. I'm still waiting on Scott and our CPA to read it; however, I don't see a problem.

The attorneys may want to add some language to include the non-tangible patent pending items (The lay flat archival polyester pocket is paid up and just waiting for the US Patent Office to mail said certification. The Disaster Safe County Binder needs to be re-filed with new drawings.). I don't know what language to use; but, I (we) are under the clear understanding they are part of the sale.

Additionally, per Scott and Mr. Oates conversation, Tim Baumgardner will be offered a position at BRC.

If there is a question or problem, please don't hesitate to contact me.

Pat


*Pat Williams*
*Louisiana Binding Service, Inc.*
337.460.8323 ext. 204
pwilliams@louisianabindingservice.com

 **Louisiana Binding Service, Inc.**
*Document Preservation Specialists*
390 Anspacet Drive
DeRidder, LA 70634
Phone: (337) 460-8323
Fax: (337) 460-8323
info@louisianabindingservice.com

---

**From:** John Woolf [mailto:John.Woolf@brc.us]
**Sent:** Thursday, April 21, 2011 3:33 PM
**To:** pwilliams@louisianabindingservice.com; swilliams@louisianabindingservice.com
**Cc:** William Oates
**Subject:** LBS/BRC Letter of Intent

Pat and Scott:

Please find attached our proposed Letter of Intent for your review.

Sonny and I will be out of the office tomorrow, but we will be in the office on Monday.

Have a good weekend.

.n

EXHIBIT
B
OK 00001

11-12838

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CASE NUMBER 1:11-CV-00794-SSB-KLL

| | | |
|---|---|---|
| TIMOTHY BAUMGARDNER, | : | CASE NO. 1:11-cv-00794-SSB-KLL |
| | : | |
| Plaintiff, | : | Judge Sandra S. Beckwith |
| | : | |
| v. | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| TENACITY MANUFACTURING | : | **BRIEF OF DEFENDANTS** |
| COMPANY, et al., | : | **PATRICK R. WILLIAMS AND** |
| | : | **SCOTT WILLIAMS'** |
| Defendants. | : | **ADDRESSING JURISDICTIONAL** |
| | : | **ISSUES RAISED BY** |
| | : | **MAGISTRATE JUDGE** |
| | : | **LITKOVITZ** |

## STATEMENT OF FACTS

This case stems from an employment arrangement between Timothy Baumgardner and Louisiana Binding Service, Inc. n/k/a LBS Liquidation Corporation ("LBS"), which resulted in the eventual termination of Baumgardner's employment. Plaintiff's Complaint alleges, in a cavalier and conclusory fashion, that all of the named Defendants have "substantial contacts with the state of Ohio" and that the "Plaintiff's claims arise from actions taken by LBS, Tenacity, Oates, Patrick Williams, and Scott Williams in the state of Ohio." (See Doc. #2, Complaint at ¶9). He alleges no predicate facts in support of such assertions.

At all times relevant herein, Defendant LBS was a Louisiana corporation, operating a specialty archival binding company with its plant and principal place of business in DeRidder, Louisiana. (Complaint, ¶4). At all times relevant herein, LBS' President, Defendants Patrick R. Williams, and Vice President, Scott Williams, were also residents of Louisiana. (Complaint, ¶¶7, 8). At all times relevant herein, Plaintiff Timothy Baumgardner has been a resident of Ohio. (Complaint, ¶2).

1

In 2009, Patrick R. Williams, in his capacity as President of LBS, engaged in telephonic and email communications with Baumgardner about the terms of possible employment with LBS. (Affidavit of Patrick R. Williams, ¶5, 6). At that time, Baumgardner was employed by Defendant Tenacity Manufacturing Company, a competitor of LBS. (Id.) An employment agreement was reached, and Baumgardner traveled to the LBS plant location in Louisiana to execute the Employment Agreement with LBS in January 2010. (Id. at ¶ 7.) Patrick R. Williams also executed the Employment Agreement, but solely in his position as President of LBS. (Complaint, Ex. A). Under the agreement, all disputes were to be governed by Louisiana law. (Id.) In 2011, LBS terminated Baumgardner, the grounds of which are the subject of this litigation.

As attested to by Patrick R. Williams, he has never been physically within Ohio. (Affidavit of Patrick R. Williams, ¶3). The negotiations of the terms and conditions of Baumgardner's employment with LBS, which Patrick Williams did in his corporate capacity, occurred within Louisiana. (Affidavit of Patrick R. Williams, ¶9). Supervision of Baumgardner's actions and effectiveness in his position with LBS occurred while Mr. Williams was in Louisiana, and while he was acting in his corporate capacity. Similarly, the review of Baumgardner's performance and the decision to terminate his employment with LBS was undertaken by Patrick R. Williams in his official capacity as President of LBS, in Louisiana, and not in an individual capacity.

Scott Williams has also never been to Ohio (Affidavit of Scott Williams, ¶3). As the Vice President of LBS, his duties were different from those of Patrick R. Williams. Scott Williams took no part in negotiating with Baumgardner for his employment at LBS. (Affidavit of Scott Williams, ¶7). Additionally, Scott Williams was not involved in any decision to terminate

2

Baumgardner, which action was undertaken solely by LBS within the boundaries of Louisiana. (Id. at ¶8.)

After his termination, Baumgardner filed suit alleging that LBS breached its agreement with him by discharging him without cause and failing to provide for his severance package in the purchase agreement it reached with another entity, and that Patrick R. Williams and Scott Williams tortiously interfered with Baumgardner's employment with LSB, and conspired with the other Defendants to bring about his termination. Defendants deny the allegations in their entirety, and pending before the Court is Defendants' Motion Requesting Determination Over Jurisdiction.

## LAW AND ARGUMENT

Determining whether an Ohio trial court has personal jurisdiction over a non-resident defendant involves a two-step analysis: (1) whether the long-arm statute and the applicable rules of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the non-resident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551 (2010) ¶28. *See also U.S. Sprint Comm. Co. Ltd. Part. v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183-184 (1994). A plaintiff bears the burden of establishing through "specific facts" that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence. *Kroger Co. v. Maltase Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). The court may consider affidavits in deciding a motion to dismiss for lack of personal jurisdiction. *Weldon F. Stump & Co. v Delta Metalforming Co.*, 793 F. Supp. 157, 158 (N.D.Ohio 1992).

As with Co-defendants Oates and Kofile Preservation, this Court does not have "general jurisdiction" over Patrick R. Williams and Scott Williams.  Neither Mr. Williams can be a resident of Ohio as neither of them has ever even been to Ohio. The Supreme Court has declined to define an explicit test for general jurisdiction, but has repeatedly held that for a non-resident defendant to be subject to general jurisdiction in the forum state, his contacts with that state must be "continuous and systematic." Conn, 2012 WL 86716 at *3 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 and n. 9 (1984)).  Neither Mr. Williams has any "continuous and systematic" contacts, or, indeed, contacts of any sort, with Ohio which might subject them to the general jurisdiction of Ohio Courts.

## I.  Ohio's Long-Arm Statute Does Not Cover The Alleged Actions Of Defendants Patrick R. Williams and Scott Williams.

The portions of Ohio's long-arm statute, R.C. § 2307.382, on which Plaintiff appears to rely, state, in pertinent part:

(A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

    (1)  transacting any business in this state;

                          * * *

    (6)  causing tortious injury in this state to any person by an act outside the state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

It is well-settled that jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 at n. 13 (1984). "Each defendant's contacts with the forum State must be assessed individually." *Id.*   The Sixth Circuit, in dealing with this issue has stated; "[i]f such suits against officers of national corporations were ever permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters...." *Conti v Pneumatic Products*

4

*Corporation*, 977 F.2d 978 (6th Cir. 1992) (citing *Weller v Cromwell Oil Co*, 504 F. 2d 927, 931 (6th Cir. 1974))

While LBS may have employed Baumgardner in Ohio for the purposes of developing business in Ohio and elsewhere, LBS' *officers* did not do so. Although the phrase "transacting any business in this state" under R.C. § 2307.382(A)(1) has been broadly interpreted, Ohio courts have limited its extension in cases similar to the present action. For instance, in *Grigor v. Starmark Hospitality Group*, Case No. 2:10-cv-20 (S.D. Ohio June 10, 2010), a breach of employment contract suit, the court refused to extend R.C. § 2307.382(A)(1). In that case, the non-resident defendants never entered Ohio, and "the communications from Defendants to Plaintiff in Ohio 'happened solely because Plaintiff happens to reside in Ohio, not because [Defendants] wished to create any kind of 'substantial connection' with the state.'" *Id*. Similarly, in this case any actions and communications were undertaken by Patrick R. and Scott Williams solely in their respective capacities as President and Vice-President of LBS—not in their individual capacities. (And, as noted above, Scott was not involved in such negotiations). Neither Patrick nor Scott Williams ever traveled to Ohio, and, to the extent Baumgardner *received* any communications from Patrick R. Williams (in his capacity as President of LBS), such receipt was solely the result of Baumgardner's choice of residency in Ohio. Further, at all relevant times, any actions and communications were undertaken by Patrick R. and Scott Williams solely in their respective capacities as President and Vice-President of LBS—not in their individual capacities. Accordingly, there is no basis for jurisdiction over them pursuant to R.C. § 2307.382(A)(1).

R.C. § 2307.382(A)(6) has been applied to actions alleging intentional torts. *See Ashton Park Apartments, Ltd. v. Lebor*, 252 F.Supp.2d 539, 548 (N.D.Ohio 2003) (R.C. §

5

2307.382(A)(6) satisfied where non-resident defendant made allegedly fraudulent misrepresentations by phone and fax directly into Ohio, in communications with an Ohio resident.); *Highway Auto Sales, Inc. v. Auto-King of Scottsdale, Inc.*, 943 F.Supp. 825, 829 (N.D.Ohio 1996) (defendant-non-resident's alleged acts of negligent misrepresentation and fraud, communicated directly to the Ohio resident by the defendant, caused injury by omission in Ohio under R.C. § 2307.382(A)(6)).

Baumgardner alleges, without citation to any predicate fact, that the Williams brothers conspired to cause him to be terminated by LBS. However, the only entity with the authority to terminate his employment was *LBS*, not Movants—and he has conceded that LBS is the entity which terminated him. Baumgardner *makes no factual allegation* to support his speculations that any of the Defendants in this action, *acting in their individual capacities*, ever had the authority or ability to affect his employment in any way, let alone performed an act, allegedly in concert with the other named parties, with the intention to injure him. Any and all decisions made about Baumgardner's employment with LBS were made by LSB, not Patrick R. and Scott Williams as individuals. *See ATC Lighting and Plastics, Inc. v. Harley-Davidson Motor Co., Inc.*, 1:10-cv-1409 (N.D.Ohio Nov. 1, 2010) (refusing to extent R.C. § 2307.382(A)(6) over defendant due to lack of evidence specific defendant took any actions on the part of a company for the "purpose of injuring" plaintiff).

Therefore, Ohio's long-arm statute provides no potential basis for extending jurisdiction over Patrick R. Williams and Scott Williams.

## II.     Extending Jurisdiction Over Defendants Patrick R. Williams And Scott Williams Does Not Comply With The Due Process Clause.

The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Kroger Co. v. Malease Foods Corp*. 437

6

F.3d. 506, 511 (6th Cir. 2006) (quoting *Calphalon Corp. v. Rowlette*, 228 F.2d 718, 721 (6th Cir. 2000)). Even assuming *arguendo* there was some basis for extending jurisdiction over Patrick R. Williams and Scott Williams under Ohio's long-arm statute, such an extension would offend constitutional due process requirements, thus, is prohibited.

In evaluating whether personal jurisdiction is constitutional under Ohio's long-arm statute, the test is whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "'traditional notions of fair play and substantial justice.'" *Bird v. Parsons,* 289 F.3d 865, 872 (6th Cir.2002). The Sixth Circuit has established a three-part test for determining whether such jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

### A. *Purposeful Availment Prong*

Neither Patrick R. Williams nor Scott Williams purposely availed themselves to the benefits and privileges of doing business in Ohio. The question of whether a defendant has purposely availed himself of the privilege of doing business in the forum state is at the heart of the personal jurisdiction issue. Under the purposeful availment prong, the Court employs the "effects test," first articulated in *Calder v. Jones,* 465 U.S. 783, (1984). Under that test, personal jurisdiction exists where an individual purposefully directs activities towards the forum state with the intent to cause harm there. *Id.* As *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 552 (6th Cir. 2007), states, "[t]he Sixth Circuit, as well as other circuits, have narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional

7

tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong."[1]

According to *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 910 (6th Cir.1988), "prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealings need be addressed to evaluate, in a 'highly realistic' way, the intended future consequences that are the real object of the business transaction." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Thus, "the parties' actions 'in the negotiation and performance of the . . . agreement' are more important factors to consider than the duration of the contract in determining whether this case 'should be subject to suit in Ohio.'" *Calphalon Corp. v Rowlette,* 228 F.3d 718 (6th Cir. 2000).

Various courts have held that contact with the forum state through letters, email, and telephone calls is insufficient to support jurisdiction.[2] For instance, in *Far West Capital, Inc. v.*

---

[1] *See Scotts Co. v. Aventis S.A.,* 145 Fed.Appx. 109, 113 (6th Cir. 2005) ("[W]e have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiffs forum state was the focus of the activities of the defendant out of which the suit arises."); *Far West Capital, Inc. v. Towne,* 46F.3d 1071, 1079 (10th Cir.1995) ("Our review of these *post-Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."); *Wallace v. Herron,* 778 F.2d 391, 394 (7th Cir. 1985) (the mere allegation of an intentional tort does not create jurisdiction in the plaintiff's home forum under *Calder*).

[2] *See also Reynolds v. Int. Amateur Athletic Fed.,* 23 F.3d 1110 (6th Cir. 1994) (finding jurisdiction impermissible where there was no real evidence that a contract was negotiated or created in Ohio, and holding that contact with Ohio through letters and phone calls was also insufficient to support jurisdiction); *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988) ("the use of interstate facilities such as the telephone and mail is a 'secondary or ancillary' factor and 'cannot alone provide the minimum contacts required by due process.'"); *Market/Media Research v. Union Tribune Pub.,* 951 F.2d 102, 105 (6th Cir.1991) (telephone calls and mail sent to Ohio insufficient for personal jurisdiction); *Calphalon Corp. v Rowlette,* 228 F.3d 718 (6th Cir. 2000) (the mere existence of a contract between the defendant and an Ohio citizen for 17 months was insufficient to confer jurisdiction over the defendant); *Continental Amer. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir. 1982) (it is well-established that phone calls and letters are not sufficient in themselves to establish minimum contacts); *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772-73 (5th Cir. 1988) (the agreement defendant allegedly interfered with "was apparently negotiated and made in Atlanta and/or New York, and there is no evidence that the agreement was made or to be performed in Texas or governed by Texas law."). *But See Ealing Corp. v. Harrods Ltd.,* 790 F.2d 978 (1st Cir. 1986) (jurisdiction proper where defendant issued daily flow of correspondence to forum state for one year, and mailed 25,000 catalogs to forum state); *Borschow Hosp. & Med. Supplies, Inc. v.*

*Towne,* 46F.3d 1071 (10th Cir.1995), the court held that jurisdiction was improper in Utah where defendant issued phone calls and 10 to 20 faxes and letters to plaintiff, and the contract was governed by Nevada law.

Further, jurisdiction is improper where contacts are issued merely because the plaintiff has chosen to reside in the forum state. *See Int. Tech. Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir. 1997) (holding that it was "purely fortuitous" that the foreign defendant-seller had any contact with Michigan since the contact was only because the plaintiff chose to reside there).

In *Pharmeica Corp. v. Adv, Healthcare Sol., LLC*, 2009 WL 3248014 (W.D.Ky. Oct. 6, 2009), the court found that it lacked jurisdiction over defendants in a tortious interference suit where plaintiff failed to allege that the contract in dispute was negotiated or signed in Kentucky. The court reasoned:

> To find jurisdiction in this case would mean that Kentucky courts could reasonably assert jurisdiction over any defendant who caused an injury to a corporation that the defendant knew would be harmed in Kentucky. **In essence, a plaintiff would almost never have to leave its home state to try a case, even if the alleged defendant had never stepped foot in that state or transacted any business with that state. That is simply too broad of an application of personal jurisdiction to be consistent with the Due Process Clause.**

(Emphasis added). *Id.* at *4.

Similarly, in *Grigor v. Starmark Hospitality Group*, Case No. 2:10-cv-20 (S.D.Ohio June 10, 2010), plaintiff was an Ohio resident who traveled to North Dakota to assist with the opening of a new Hooters restaurant franchised by defendant, a company organized under the laws of North Dakota, where it has its principal place of business. While Grigor was in North Dakota, defendants approached him about coming to work for defendant. After Grigor returned to Ohio, the President of defendant recruited him via email and telephone calls to accept employment

---

*Burdick-Siemens Corp.*, 143 F.R.D. 472 (D.Puerto Rico 1992) (jurisdiction proper where defendant sends a series of letters to forum state and travels to forum state to settle a claim).

with defendant, and relocate to North Dakota.  In October 2008, Grigor quit his job and accepted

the position with defendant. Plaintiff left Ohio and began working in this new job on November

10, 2008. Plaintiff was then discharged and filed suit in Ohio.  *Id.*

In granting defendants' motion to dismiss for lack of personal jurisdiction, the court

stated:

> The fact that this litigation involves a contract signed by one party in Ohio is not
> dispositive. Under Ohio law, "the mere existence of a contract involving a forum
> resident does not confer personal jurisdiction." *National City Bank v. Yevu,* 178
> Ohio App.3d 382, 385, 898 N.E.2d 52, 54 (Ohio App. 8th Dist. 2008).
> Additionally, the fact that negotiations reached into Ohio does not mandate an
> answer to the personal jurisdiction issue. This is not a case in which a defendant
> visited Ohio multiple times to make representations in Ohio that induced a
> plaintiff to enter into the contract at issue. *See, e.g., Kehoe Component Sales, Inc.
> v. Best Lighting Prods., Inc.,* No. 2:08-cv-752, 2009 WL 2591757, at *3 (S.D.
> Ohio Aug. 19, 2009) (holding that a defendant's trips to Ohio for negotiations
> created personal jurisdiction under § 2307.382(A)(1)). Rather, Defendants never
> visited Ohio to conduct the negotiations, but instead relied only upon emails,
> phone calls, and at least one letter. * * * There is no "more" here-in other words,
> no "continuing obligation that connects the non-resident defendant[s] to the state
> or some terms of the agreement that affect the state." *Shaker,* 2008 WL 4346777,
> at *3 (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio
> St.3d 73, 76, 559 N.E.2d 477, 480 (1990); *U.S. Sprint Commc'ns Co. Ltd. P'ship,*
> 68 Ohio St.3d 181, 185, 624 N.E.2d 1048, 1052 (1994)).
> * * *
> In addition to meeting the foregoing two factors, Plaintiff would have to
> demonstrate that a substantial connection exists between Defendants and Ohio.
> *McMunigal,* 2010 WL 2106186, at *4. **But the communications from
> Defendants to Plaintiff in Ohio "happened solely because Plaintiff happens to
> reside in Ohio, not because [Defendants] wished to create any kind of
> 'substantial connection' with the state."** *Id.* Moreover, Plaintiff's failure to
> satisfy the second factor above renders moot his interestingly creative argument
> that his departure from Ohio affected the commerce of that state.

(Emphasis added). *Id.*

Moreover, jurisdiction is only proper "where the contacts proximately result from actions

by the defendant *__himself__* create a 'substantial connection' with the forum State." (Emphasis

added). *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 551 (6th Cir.

2007). Indeed, "[u[nilateral activity of those claiming a relationship with a nonresident defendant is not sufficient and 'it is essential in each case that there be some act by which the defendant purposely avails itself of the privileges of conducting activities within the forum state." *Far West Capital, Inc. v. Towne,* 46F.3d 1071, 1076 (10th Cir.1995).

Here, it is undisputed that Scott Williams took no part in negotiating with Baumgardner for his employment at LBS. Scott Williams was not involved in any decision to terminate Baumgardner, which action was undertaken solely by LBS within the boundaries of Louisiana. Further, at all relevant times, Scott Williams was acting solely in his capacity of Vice President. Accordingly, Scott Williams did not purposefully avail himself to the privileges of doing business in Ohio and could not reasonably expect the possibility of being hailed into court in Ohio.

Further, as set forth in the Complaint, it was LBS, not Patrick R. Williams and Scott Williams, who negotiated with and hired Baumgardner. There is no suggestion that they traveled to Ohio at any point for this purpose. Apart from Patrick R. Williams' telephonic and email communications (while acting solely on behalf of LBS) with Baumgardner, neither of the Williamses had contact with the forum state. Indeed, the contacts with the forum state happened merely because Baumgardner chose to reside there. Under Baumgardner's expansive interpretation of personal jurisdiction, a plaintiff would almost never have to leave its home state to try a case, even if the alleged defendant had never stepped foot in that state or transacted any business with that state. Such an interpretation is simply too broad of an application of personal jurisdiction to be consistent with the notions of fair play and substantial justice under the Due Process Clause.

11

Accordingly, applying the purposeful availment test, there is no basis for the Court to find personal jurisdiction over Patrick R. Williams and Scott Williams.

### B.  *Arising From Prong*

Scott Williams' contacts with Ohio are non-existent, and Patrick Williams' contacts with Ohio were random, fortuitous, and attenuated at best.   Indeed, under the second factor, the cause of action must arise out of the defendant's activities in the forum state.   *Air Products and Controls, Inc. v. Safetech Intern., Inc*., 503 F.3d 544, 553 (6th Cir. 2007).  A cause of action can be of whatever type, as long as it has "a substantial connection with the defendant's in-state activities." *Id.*   Under the "made possible test" of *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 231 (6th Cir.1972)*,* personal jurisdiction can be exercised where both acts of breach of contract and tortious misconduct and their consequences are made possible only by the defendant's transaction of business with the plaintiff.

Again, the operative facts of the controversy -- that Patrick and Scott Williams' conspired with the other Defendants and engaged in actions which tortiously interfered with Baumgardner's contract with LBS–are not activities which occurred, or have even been alleged to have occurred, in Ohio. There is no evidence of direct actions by Patrick R. Williams or Scott Williams, or of consequences caused by either or both of them, with a connection substantial enough with Ohio to make the exercise of jurisdiction over them reasonable. Their contacts with Ohio are exactly those types of random, fortuitous, and attenuated contacts, which courts have found to be insufficient for an exercise of personal jurisdiction.

### C.  *Reasonableness Prong*

12

The exercise of jurisdiction over Patrick R. Williams and Scott Williams would be entirely unreasonable. In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy. *Intera Corp. v. Henderson,* 428 F.3d 605, 618 (6th Cir. 2005).

Any contact either Scott or Patrick Williams has had with Ohio arises solely because Baumgardner chose to reside in Ohio rather than any effort by them to avail themselves of the benefits and protections of Ohio. The employment agreement at issue is also to be governed under Louisiana law. Accordingly, the parties have expressly agreed that Louisiana, not Ohio, has the sole interest in resolving any dispute between the parties regarding their employment agreement. Further, under Baumgardner's expansive interpretation of personal jurisdiction, a plaintiff would almost never have to leave its home state to try a case, where the defendant had never stepped foot in that state or transacted any business with that state. Such an interpretation is simply too broad of an application of personal jurisdiction to be consistent with the Due Process Clause.

Therefore, the exercise of jurisdiction over Patrick R. Williams and Scott Williams violates the Due Process Clause, and this court should dismiss both Defendants from this suit for lack of personal jurisdiction.

## CONCLUSION

For all the foregoing reasons, the Motion of Defendants Patrick R. Williams and Scott Williams must be granted and Defendants should be dismissed from this action for lack of personal jurisdiction.

13

Respectfully submitted,

SMITH, ROLFES & SKAVDAHL CO., LPA

/s/Gary L. Hall
Gary L. Hall, Esq. (0018693)
Valerie L. Van Valkenburg, Esq. (0034426)
(513) 579-0080
(513) 579-0222 - fax
ghall@smithrolfes.com
vvalkenburg@smithrolfes.com

ATTORNEYS FOR DEFENDANTS,
LOUISIANA BINDING SERVICE, INC.,
PATRICK R WILLIAMS AND SCOTT WILLIAMS

## CERTIFICATE OF SERVICE

This is to confirm that a copy of the foregoing was served upon Magistrate Judge Karen L. Litkovitz at Litkovitz_Chambers@ohsd.uscourts.gov., and all parties or their counsel of record by electronic mail on April 24, 2012.

/s/Gary L. Hall
Gary L. Hall, Esq.

14